Hillsborough, }
   Dec., 1899. }

70  187
72    7
72    8
72  144

SMITH & a. v. BANK OF NEW ENGLAND.

The denial of requests for specific instructions is not erroneous when their substance is included in the charge.

An instruction will not be given when it merely requires the negative statement of a proposition which has been correctly and positively presented.

An instruction is properly refused when there is no evidence to which it can apply.

Upon the question whether the defendants, as trustees, used due care in the approval of securities held as collateral for certificates of deposit and in the management of the trust fund, instructions relating to the chargeability of certificate holders with knowledge of the provisions of the trust agreement, and to the legal duty of the defendants respecting the transfer of certain stock, were properly refused, as immaterial to the issue.

Where the negligence of a bank in approving certain securities is the question at issue, the evidence of one of its officers that he would have taken them on his personal account, under similar circumstances, is inadmissible.

BILL IN EQUITY, brought by the holders of secured certificates of deposit issued by the Union Trust Company, to recover from the defendants upon a contract made by them with the Union Trust Company on March 29, 1892, for the benefit of all parties who should become in any wise interested in the subject-matter of the contract. In this contract the defendants agreed, among other things, that they would "not certify or countersign any certificates for which they do not hold securities, whether of real estate mortgages, or bonds, or tax-sale certificates, or shares of stock in incorporated Iowa banks, or both, of the value of ten per cent in excess of the certificates so countersigned. Such securities, notes, bonds, warrants, bank stock, and certificates shall be rated and held only at their actual worth, to the best of their judgment, and in no case beyond their par value."

The plaintiffs' evidence tended to show that, after making the contract of March 29, the Union Trust Company deposited with the defendants 180 shares of stock of the First National Bank of Ida Grove, Iowa, of the par value of $100 each; $68,000 (par value) of the gold certificates of the Farmland Securities Company of Iowa; and $20,000 (par value) of the certificates of the preferred shares in the Farmland & Live Stock Company, Kansas City, Mo.; that the defendants' officers, in rating these securities for the purposes for which they were to hold them, relied entirely on the representations of the officers of the Union Trust Com-

pany, and made no independent investigation as to their value; that at the time these securities were taken, and until shortly before its failure in June, 1893, the Trust Company stood high in the western states, and especially in New Hampshire, as a safe, prosperous, and well managed financial institution; and that the officers connected with it and in charge of its affairs, both here and there, were generally regarded as entirely responsible and trustworthy men, upon whose representations reliance could be placed.

During the period covered by the contract, other well managed banks in New Hampshire, and men of good financial standing in this state, took large amounts of other kinds of securities of the Union Trust Company, with collateral, all of which proved to be worthless at the time of the failure of the company, except in one instance, where about forty per cent of the collateral was realized. It did not appear whether any of these institutions made any independent inquiry as to this collateral. It appeared that the Farmland Securities Company and the Farmland & Live Stock Company were paper corporations and never had any actual existence, and that a slight investigation would have disclosed this fact, if it had been made where these companies were understood to be located; that the stock of the Ida Grove National Bank had some value at one time, but that the bank went into voluntary liquidation, and that the defendants never discovered this fact or made any effort to discover it; that other stock of the same company had been taken soon after the contract was made, and at that time it was worth more than par, but it had been withdrawn and other securities substituted in its place under the trust agreement; that the defendants had no actual knowledge or information that the Ida Grove Bank was going or had gone into voluntary liquidation, but made no inquiries into these facts, and no facts were brought to their attention that would put them on inquiry, unless the fact that the shares of stock of the bank stood in the name of the " Union Trust Company, trustee," should have done so; that the bank went into voluntary liquidation by vote of its stockholders in Ida Grove, April 12, 1893; that if the defendants had known of it, they could probably have realized the value of the stock; that the defendants countersigned about $70,000 worth of certificates on the strength of this collateral, which were outstanding and unpaid on July 1, 1893, at which time this collateral was absolutely valueless, and the Union Trust Company was in the hands of a receiver, its assets being barely sufficient to pay the expense of administration. The officers of the defendant company testified that they believed, from the representations made to them by the officers of the Union Trust Company and what purported

to be copies of the records of their incorporation and organization, which they produced, that the Farmland Securities Company and the Farmland & Live Stock Company were regularly and properly organized, and that they had the assets certified to be held by them in their certificates of stock and in the trustee's certificate indorsed upon them.

Seven specific questions were submitted to the jury. The first three were, in substance, were the defendants negligent in approving (1) the $18,000 of stock of the Ida Grove National Bank, (2) the gold certificates of the Farmland Securities Company, (3) the certificates of preferred shares of the Farmland & Live Stock Company. The next three were, in substance, were the defendants negligent in managing (1) the stock of the Ida Grove National Bank, (2) the gold certificates of the Farmland Securities Company, (3) the certificates of preferred shares of the Farmland & Live Stock Company. The seventh question was whether the defendants were negligent as to their management of the stock of the Ida Grove National Bank in reference to perfecting their title and having it transferred to them on the books of the bank. The jury answered all these questions in the affirmative.

The jury were instructed as follows: "The contract of March 29, 1892, made it the duty of the defendants to rate all securities offered to them for approval at their actual value at the time they were offered, and provided that they should not be liable for errors of judgment in making this valuation. So the question is: Did the defendants approve these securities at their actual worth, to the best of their judgment? If the defendants' officers fairly exercised their judgment when they rated these securities as they did, they have performed their duty in regard to approving securities; but they did not fairly exercise their judgment if they neglected to use due care in investigating the value of these securities — that is, to make such an inquiry into their value as men of average prudence, placed in the same situation as the evidence shows you the defendants were, would have made; for the defendants are held to have knowledge of all facts and circumstances which they might have known by the exercise of due care — that is, such care as men of average prudence, under precisely the same circumstances, would have used. If the defendants' officers made such inquiry and fairly acted upon it, then the defendants have fairly exercised their judgment and have performed their whole duty. On the question whether they made such investigation as a reasonably prudent man would have made, you will consider, with all the other evidence in the case, the sources of the defendants' information and the weight a reasonably prudent man would have placed on the statements of the officers of the Union Trust

Company.  The fact that the reputation of the Union Trust Company was good did not relieve the defendants from the duty of approving the securities which they accepted; indeed, it did not increase or diminish their duty.  But this good reputation is evidence for you to consider with all the other evidence in the case, on the question whether the defendants used due care in approving these securities and also in managing the trust fund.  By the contract of March 29, the defendants undertook to hold the securities deposited with them for the benefit of the certificate holders, and this undertaking carried with it the duty to use such care in the management of these securities after they received them as a reasonably prudent man would use under the same circumstances; and in considering this question you should take into account, together with all the other facts and circumstances in the case, the purposes for which the defendants were holding them, and that the defendants were not to collect interest or dividends upon them unless the Union Trust Company made default in payments to certificate holders.  The fact that the securities have proved to be worthless is not enough to charge the defendants with negligence.  The questions are: Were they of impaired value when the defendants took them, and ought the defendants to have known that fact?  Did the defendants' officers, considering all the circumstances of the case, act as reasonably prudent men placed in their circumstances would have acted at that time?  If they did not, they were negligent; but if they did, they have performed their whole duty."

The jury were told, in substance, that the defendants did not warrant the payment of the certificates of deposit, but that the only question was whether or not the defendants had performed the duties which the law imposed on them for the benefit of the plaintiffs, as those duties had been described to the jury.

The defendants requested the court to give the jury the specific instructions considered in the opinion, which were refused except so far as included in the foregoing instructions, and the defendants excepted.

One Elliott, an officer of and a witness for the defendants, was asked by their counsel, upon direct examination, the following question: " Would you have been willing to have taken the securities which were deposited with you as trustees,— these bank certificates and gold certificates,— would you have been willing to have taken those securities as security for a debt of the Union Trust Company to you, yourself?"  The question was excluded, and the defendants excepted.

At the close of the plaintiffs' evidence the defendants moved for a nonsuit; at the close of all the evidence they moved that a

verdict be directed for them; and after a verdict for the plaintiffs they moved to set it aside as against the weight of the evidence, and because the jury were actuated by prejudice or fell into a manifest error. These motions were severally overruled, and the defendants excepted.

*Taggart & Bingham, Elijah M. Topliff*, and *Thomas G. Frost* (of Minnesota), for the plaintiffs.

*James F. Briggs, Oliver E. Branch*, and *Burnham, Brown & Warren*, for the defendants.

BLODGETT, C. J.   With regard to the motions for a nonsuit and to direct a verdict, we are constrained by the reported facts to hold that their denial was proper; and with respect to the motion to set aside the verdict as contrary to the weight of evidence, it suffices to say that the exception to its denial raises no question of law. It only remains, therefore, to consider the defendants' numerous requests for instructions and the exclusion of the question to the witness Elliott.

The requests were:

1.   "The defendant was not an indorser, surety, or guarantor of the certificates of deposit issued by the Union Trust Company, and incurred no liability under the trust agreement to pay them." This request was given in substance in the charge, and, moreover, was not insisted upon at the argument, and so may be regarded as waived.

2.   "The defendant did not guarantee, warrant, or insure the value of the collateral security at any time, or of any particular kind, whether bank stocks, gold bonds of the Farmlands Securities Company, or the preferred shares of the Farmland & Live Stock Company." The denial of this request was not erroneous. There was no claim that the defendants guaranteed, warranted, or insured the value of the collateral securities. Their duty in this regard was that they should fairly exercise their judgment in rating the securities, and if they did, they would not be liable for any errors of judgment in making the valuation; and such was the instruction to the jury. Having clearly stated to the jury what the positive duty of the defendants was in respect of the valuation of the securities, there was no occasion for the court to go farther and state in a negative form what was not a part of that duty.

3.   "Every purchaser of the certificates of deposit of the Union Trust Company was presumed to know, and was bound to know, what the agreement was between the Union Trust Company and

the Bank of New England." This request was properly denied. It had no possible bearing upon the issue before the jury. That issue was solely whether the defendants were guilty of negligence in approving or managing the securities held by them under the trust agreement, and in no way related to the plaintiffs' knowledge or ignorance of the terms of that agreement.

4. "Every purchaser of the certificates of deposit of the Union Trust Company was bound to take notice, and in law did take notice, of the contents of the certificates which were signed by the Bank of New England upon the back of the certificates of deposit of the Union Trust Company, and that the Bank of New England certified to the face value only of the collateral security which they held." The denial of this request was proper. Assuming the defendants' contention as to notice to be correct, it was immaterial upon the issue. The plaintiffs' cause of action was not based upon any contract or representation of the defendants specifically set forth in their indorsement of the certificates of deposit purchased by them of the Union Trust Company, but upon the provision of the trust agreement of March 29, 1892 (which by the very wording of the indorsement is made a part of it), requiring the defendants to rate the securities only " at their actual worth to the best of their judgment." Such being the fact, their indorsement clearly embraced this provision, as well as that relating to the face value of the collateral held by them.

5. "Every purchaser of the certificates of deposit of the Union Trust Company, having notice that the Bank of New England certified to the face value only of the collateral held by them, took the risk of the collateral being worth less than its face value, and was put upon inquiry to ascertain, if he desired to know, what the actual value was." The defendants can take nothing by the denial of this request. As already stated, their certificate was not limited to the face value of the collateral, but extended to the obligation of the trust agreement to rate the collateral to the best of their judgment. The burden of doing this was put upon the defendants by the express terms of the agreement, and the plaintiffs had the right to rely upon the faithful discharge of the duty so imposed upon them.

6. "Every purchaser of the certificates of deposit of the Union Trust Company was bound to know that the collateral held by the defendant, the Bank of New England, was subject to be changed at any time after he purchased his certificates, and that it might have been changed from time to time before he purchased his certificates." As has been said in reference to the third request, this request had no possible bearing upon the issues submitted to the jury. The right to change the collateral from time to time was

not in controversy, and is distinctly recognized in the trust agreement which was read to the jury and was also before them for examination.

7. "The defendant, the Bank of New England, was not legally bound to have the stock of the Ida Grove National Bank transferred to it upon the books of the Ida Grove National Bank, and need not have done so for the purpose of disposing of that stock according to the terms of the trust agreement." The defendants' exception to the denial of this request cannot avail them. The question was not whether it was their legal duty to have had the stock in question transferred to them on the books of the Ida Grove Bank, but whether, as a measure of proper precaution under the particular circumstances of the case, and in the exercise of due care, they should have had the transfer made. This question was one of fact, and upon it the jury were properly instructed that the defendants' undertaking in respect of the management of the trust securities held by them "carried with it the duty to use such care . . . as a reasonably prudent man would use under the same circumstances." Furthermore, the request was rightly refused, because so much of it as related to the disposal of the stock was not an issue before the jury, and so rendered the whole request improper as an instruction. When a requested instruction is incorrect and bad in part, it is properly denied. Nor are we prepared to hold, upon the facts appearing in the case, that it was not the legal duty of the defendants to have had the stock transferred to them upon the books of the Ida Grove Bank.

8. "The defendant, the Bank of New England, had no right to, and could not, sell or dispose of the collateral securities in its hands, of any kind, until there was a default by the Union Trust Company in the payment of the interest or principal of the certificates of deposit of the Union Trust Company." So far as appears or may fairly be presumed, this request was wholly foreign to any issue which the jury were called upon to determine. The record fails to disclose any contention, or intimation even, that the defendants had the right to sell or dispose of the collaterals in their hands except in case of default for sixty days by the Trust Company in the payment of interest upon any of its certificates, as provided for in the trust agreement, or that it was their duty so to sell or dispose of such securities. Having fully instructed the jury what the defendants' duties were under the agreement, the court could not be required to instruct them what the defendants' duties were not, in the absence of any contention or evidence that they were subject to such duties.

9. "The defendant, the Bank of New England, was bound to rate and hold the collateral securities deposited with them from

time to time at their actual worth only, according to their best judgment, and were not negligent if its officers honestly erred in their judgment, if they did what men of ordinary intelligence under like circumstances would do." This request was fully covered by the instructions given to the jury, and consequently there is no occasion to further dwell upon it.

10. "If the defendant, the Bank of New England, acting under the advice of its attorney, Mr. Briggs, made an innocent mistake upon any doubtful point of law involved in the transactions, the defendants cannot be charged with negligence on that account." It has been so repeatedly held in this jurisdiction as to render the citation of authorities useless and pedantic, that before the court can be required to give particular instructions, there must be evidence upon which to base them; and upon careful search we find no evidence whatever that the defendants took the advice of Mr. Briggs on any specific question relative to the trust. He testified, simply, that whenever the bank needed advice they used to come and see him about it. Nor does it appear that the defendants acted under his advice which resulted in "an innocent mistake upon any doubtful point of law" arising out of the performance of trust duties. And even in the view most favorable to them upon the evidence, it must still be held that the request was rightly refused, because a party is not entitled to instructions which assume facts which are not admitted, do not appear to have been tried, and of which there is only evidence tending to prove. *Cheshire R. R.* v. *Foster*, 51 N. H. 490, 493.

11. "In determining whether or not the defendant, the Bank of New England, was negligent in any respect, you are to consider the standing of the Union Trust Company and the reputation of the men who had charge of its affairs during the year 1892 and before its failure, the situation of the parties at that time, and all the surrounding circumstances as they then appeared, and not as they now appear." This request was, in effect and substance, included in the instructions given to the jury, and it is familiar law that in such a case no valid ground of exception is afforded.

12. "In determining the question whether or not the defendant, the Bank of New England, was negligent in any respect, you are to confine yourselves strictly to the obligations which it assumed under the trust agreement, and say whether or not, under all the circumstances as they then appeared, and considering the financial standing and reputation of the Union Trust Company in this community, and of the men connected with it during the time covered by the trust agreement, the defendant was negligent in the discharge of the duties which it assumed under the contract."

In its essential features, this request also was covered by the instructions given. The plaintiffs' cause of action was wholly based upon the defendants' alleged violation of the obligations assumed by them under the trust agreement, and was so treated by the presiding justice in his charge. He further specifically instructed the jury that the reputation of the Union Trust Company was good, and that this afforded proper evidence for their consideration, in connection with all the other evidence in the case, both on the question of whether the defendants used due care in approving the securities and in managing the trust fund; that the fact that the securities proved to be worthless was not enough to establish the defendants' negligence; that the questions were, whether the securities were of impaired value when the defendants took them, and whether the defendants ought to have known it; and that if the defendants' officers, considering all the circumstances of the case, acted as reasonably prudent men placed in their situation would have acted at that time, they performed their whole duty. These instructions stated the law of the case upon the point under consideration fully, accurately, and clearly, and, as before stated, it is no ground of exception that they were not given in the precise form and language requested.

The question to Elliott was properly excluded. It called for his opinion, simply, upon a matter not the subject of expert testimony. In common with the defendants' other officers, he had been admitted to testify that he acted in entire good faith as to the securities, that the reputation of the parties from whom they were obtained was good, and that he fully relied upon and believed their representations. What he would have done under the hypothetical condition suggested by the question was, in the very nature of things, a mere conjecture and speculation, and, as such, was clearly inadmissible.

*Exceptions overruled.*

YOUNG, J., did not sit: the others concurred.