Coös,   ⎱
June, 1900. ⎰

## MORRISON *v.* BURGESS SULPHITE FIBRE CO.

The duty of a master to furnish his servants a safe and suitable place in which to work extends to only such portions of the premises as are designed for their occupancy, and such as he knows, or ought to know, they are accustomed to use.

A master is not bound to furnish his servants with tools and appliances suitable for purposes other than those for which they are provided.

If a servant, knowing the purpose for which an appliance is constructed, puts it to a different use, he cannot recover for injuries resulting therefrom, in the absence of evidence that such use was intended or ought reasonably to have been anticipated by the master.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff, whose evidence tended to prove that on April 3, 1899, he was a man of average intelligence, thirty-three years old, and

employed by the defendants in their mill to set up and repair machinery. His work took him to every part of the mill, and on that day he, with others, was in the fourth story putting up a bridge-tree. This was a stick of Georgia pine ten inches square and fourteen feet long, supported on timbers placed about ten inches below the ceiling which was seven and one half feet from the floor. One end of the bridge-tree came nearly over the top of an elevator. This elevator consisted of a rectangular box twenty-six inches wide, extending at an angle of about forty-five degrees from the basement nearly to the ceiling of the fourth story, where it turned at nearly a right angle toward the floor. It was built to lift material used in the upper story from the basement. This was done by means of a belt, with heavy iron buckets attached, running inside the box. That part of the elevator which turned back connected with an open box which extended along the floor at nearly a right angle to the elevator. This was called the conveyor, and the material brought up by the elevator was carried in it to the machine where it was used. A few feet of that end of the elevator which connected with the conveyor, together with that end of the conveyor, were covered with canvas. The rest of the elevator was covered with boards. At the time of the accident, this canvas was so covered with chips and dust that it could not readily be distinguished from the adjacent board covering, and it all appeared to one facing it like a flat surface of wood twenty-six inches wide, extending from the top of the conveyor, which was from two to two and one half feet from the floor, nearly to the ceiling, at an angle of about forty-five degrees.

The workmen were unable to place the bridge-tree in position on account of an obstruction on the face of a supporting timber, and the plaintiff stepped upon that part of the elevator which was covered with canvas, intending to stand there and remove the obstruction, when almost immediately he lost his balance and fell upon the canvas, which gave way and precipitated him to the elevator buckets. It was not necessary, but only convenient, for him to stand there to do this work; but he helped to build the elevator, and knew that the man who had charge of the work intended to cover it with boards the same as the other elevators were. When he stepped upon it he thought this was so covered and safe to stand on. The defendants knew how this part of their elevator was covered, but did not tell the plaintiff that the covering was canvas. He understood for what purpose it was built, and there was no evidence that the defendants intended their servants to use it for any other purpose, or that they had ever before done so.

The court denied the defendants' motion for a nonsuit, and they excepted.

*Enoch Foster* (of Maine), for the plaintiff.

*Drew, Jordan & Buckley, Chamberlin & Rich,* and *Orville D. Baker* (of Maine), for the defendants.

YOUNG, J.   The plaintiff says the defendants failed to perform the duty the law imposed upon them for his benefit, both in respect of furnishing him a safe place in which to work, and suitable tools and appliances for his use.   Although it is the master's duty to use ordinary care to keep his premises in such condition that his servants can perform their work in safety, or to notify them of dangers to which they are exposed, and to furnish them with tools and appliances suitable for the purposes for which they are provided, or to notify them of the defects in those furnished, there was no evidence that they failed to perform any of these duties. If this elevator was a part of their premises, they owed him no duty to so cover it that he could safely use it as he did.   They did not put the coverings on their elevators for their servants to stand on, and it did not appear that they ever before had been used in that way.   A master's duty in respect to furnishing his servants a safe place in which to work extends to such parts of his premises only as he has prepared for their occupancy while doing his work, and to such other parts as he knows or ought to know they are accustomed to use while doing it.   *McGill* v. *Granite Co., ante, p.* 125.   If this elevator was a tool or appliance, the defendants owed the plaintiff no duty respecting it at the time of the accident, for he was then putting it to a use for which he knew it was not intended; and although it is a master's duty to use due care to furnish his servants tools and appliances suitable for the purpose for which they are provided, he owes them no such duty when they put his tools to uses for which they were not intended. *Young* v. *Railroad,* 69 N. H. 356.

There is no force in the plaintiff's claim that the defendants set a trap for him when they covered this part of their elevator with canvas and did not tell him of the fact, for a master sets a trap for his servant only when he invites him into a dangerous situation, or creates or suffers one to exist in a place where he knows or ought to know his servant is likely to go.   *Sweeny* v. *Railroad,* 10 Allen 368.   The case does not show that the defendants either intended for the plaintiff to use this elevator as he did, or knew, or were in fault for not knowing, that he was likely to do so.   A person is not in fault for not knowing particular facts unless circumstances exist which would put a man of average prudence upon inquiry (*Shea* v. *Railroad,* 69 N. H. 361), and no such circumstances were shown.

The plaintiff's situation would have been no different if the defendants, instead of putting him to work on the bridge-tree, had set him to paint the mill, and he had hung his stage from a gutter which they knew was insecurely fastened, but which he supposed was secure, and his stage had fallen and injured him. It is clear that these facts would be no evidence of their failure to perform any duty the law imposed on them for his benefit; for although it is a master's duty to set no trap for his servant, leaving a gutter insecurely fastened would not amount to that unless they intended for him to hang his stage from it, or knew, or were in fault for not knowing, that he was likely to do so. The mere fact that the gutter was where he could use it for that purpose would neither be evidence that it was put there for him to hang his stage from, nor that they ought to have known that he was likely to do so. But if, in addition to these facts, it appeared that painters were accustomed to use gutters in this way, it would have been for the jury to say whether or not the defendants ought to have anticipated that he would do so. If the jury had found that the defendants ought to have known that he would use it, they could then say a trap was set for him when the defendants left the gutter as they did; for that would be finding that they suffered a dangerous situation to exist upon a part of their premises which they knew their servants were accustomed to use in doing their work. But that is not this case, for there was no evidence that the plaintiff or any one else ever used any of the defendants' elevators in the way he was using this when the accident happened.

If the fact that the elevator happened to be where he could stand on it and do his work was evidence either that the defendants intended for him to use it as he did, or that they were in fault for not knowing that he was likely to do so, every master who leaves any implement upon his premises which his servants cannot safely use for every purpose which suits their convenience, regardless of that for which it was provided, sets a trap for them. In that event, the master's duty in this respect would not be limited to using ordinary care to furnish his servants with tools and appliances suitable for the purpose for which they were provided, but it would be his duty to furnish such tools and appliances as his servants could safely use for any purpose which suited their fancy.

The mere fact that the plaintiff could stand on this elevator and remove the obstruction from the face of the supporting timber would no more justify him in believing that it was put there for that purpose, or make it the defendants' duty to anticipate that he would so use it, than the single fact that a painter could reach the ceiling of a room he was painting by standing upon a table

which formed a part of its furniture would either justify him in believing it was put there for that purpose, or make it the duty of the owners of the house to anticipate that he would do so. If he so used it, and was injured because of a defect in its construction, of which they knew but did not notify him, there would be more force in a claim that they set a trap for him when they left this table in the room, notwithstanding it was a part of the furniture and they had no reason to anticipate that he would stand upon it, than in the plaintiff's claim that the defendants set a trap for him when they failed to notify him that this part of their elevator was covered with canvas; for, in addition to its being a part of the machinery of their mill, and there being nothing which made it their duty to anticipate that he would use it as he did, its surface sloped at so great an angle that they might well have thought it was a physical impossibility for him to stand upon it.

*Exception sustained: judgment for the defendants.*

PIKE, J., did not sit: the others concurred.