### ETTA B. HUSSEY, *Adm'x*, *v.* BOSTON & MAINE RAILROAD.

The adoption of the employers' liability act, abolishing the defense of assumption of risk, and changing the burden of proof upon the issue of contributory negligence, has created a new situation in actions by a servant for injuries caused by the negligence of the master. Recovery is no longer denied as matter of law because the servant knowingly encountered a danger, unless it conclusively appears that he was negligent in so doing.

The abolishment of the defense of assumption of risk cannot be nullified by holding that encountering a known danger is necessarily negligent.

The causal negligence of the defendant being established, uncertainty as to how the accident occurred will not defeat a recovery, in an action under the employers' liability act.

Proof of due care on the part of a servant in a dangerous situation does not establish like care in the creation of the situation. There may be reasonable occasion to act in a dangerous situation which there was not reasonable occasion to create.

There being no direct evidence of the manner in which a servant was injured, it is competent to prove various ways in which the accident might have occurred, both to negative the inference that it was necessarily caused by the servant's negligence, and also to prove the negligence of the master in allowing such dangerous conditions to exist.

Evidence properly in a case for one purpose is not exceptionable on the ground that it is capable of use for an improper purpose, in the absence of a request that its use be confined to the proper purpose.

CASE, for negligently causing the death of the plaintiff's intestate, Edwin C. Hussey. Trial by jury and verdict for the plaintiff. Transferred by *Sawyer*, J., upon the defendant's exceptions to the denial of its motions for a nonsuit and for a directed verdict and to the admission of evidence.

The facts are stated in the opinion.

*Robert W. Upton* and *Joseph C. Donovan* (*Mr. Upton* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

PEASLEE, C. J. This is a suit to recover damages for causing the death of the plaintiff's intestate, while he was employed by the defendant to work upon and about electrical appliances. The accident occurred in an electric power station. The arrangement of the premises consisted in part of a row of transformers, located under a

balcony which was supported on iron posts. At the rear of two of these posts, and attached to the under side of the balcony, there were ordinary electric light sockets. Another socket was located on the southerly post, and switches controlling the current to all these sockets and to others about the station were on the same post. High tension wires, in groups of three each, ran from other appliances across the aisle in front of the transformers and were attached to the bottom of the balcony. One of these wires was southerly of the post carrying the switches, and not under the balcony. The wires were slightly above the socket on the post and the socket could not be reached by a man standing on the floor.

The decedent was an experienced lineman, and had done other kinds of work upon electrical appliances. It was a part of his duty to make repairs in this station, but there was no evidence that he had done any considerable amount of such work before the accident. On the night in question, repairs on one of the northerly transformers were required. Another employee, who had charge of the electrical control, shut down one of the rotaries. The decedent and his helper procured the needed tools, an extension light and a stepladder. The ladder was placed near the southerly post. Hussey then placed the lamp attached to the extension cord near where the work was to be done, and laid the cord along the aisle to the post. Shortly thereafter there was an electrical discharge, and Hussey was found lying dead near the post. His hat, his head and the palms of his hands were burned and the light cord was lying across his body. The dust was missing from the bottom of the high tension wire southerly of the post, and an insulator at that point was freshly chipped, indicating that the discharge had been at that place.

The defendant's motions for a nonsuit and a directed verdict present the usual questions relating to negligence of the defendant and care of the decedent. As the defendant had not accepted the provisions of the employers' liability act, the defense of assumption of risk is not available here. Laws 1911, *c.* 163, *s.* 2; *Spilene* v. *Company*, 79 N. H. 326.

There is abundant evidence of the defendant's fault. The location of the light socket in close proximity to the high tension wires, when it might well have been placed two feet lower and within easy reach of a man standing on the floor, is sufficient upon this issue. *Osman* v. *Company*, 78 N. H. 597. The defendant seeks to avoid the consequences of the creation of such a situation by the claim that there was no occasion for Hussey to use this particular socket, and that he

ought to have used one of those under the balcony, near the place of his work and where the high tension wires had been deadened by the stopping of the rotaries.

There are several sufficient answers to this proposition. Hussey had never been concerned with the management of the machinery, and even the man who had was confused and indefinite in his testimony as to what wires would or would not be deadened by the amount of shutting down that was done on the night of the accident. The sockets under the balcony were above the high tension wires, and a crossing of one of these, when charged, with the extension light cord would be dangerous. It did not appear that Hussey knew of these sockets. His helper did not, until after the accident. Whatever socket he used, he would probably have to go to the post to turn the switch. In view of these facts it cannot be said as matter of law that the defendant ought not to have anticipated the course of conduct pursued by Hussey, or that Hussey was not acting reasonably and within the scope of his employment when he sought to attach the extension light cord to the more distant socket on the post. There was sufficient evidence of the defendant's fault, and of the causal relation of that fault to the accident.

The defendant relies strongly upon certain cases dealing with the unauthorized or unexpected use of premises and appliances by an employee. *McGill* v. *Company,* 70 N. H. 187; *Morrison* v. *Company,* 70 N. H. 406; *Straw* v. *Company,* 76 N. H. 35; *Richardson* v. *Company,* 77 N. H. 187. These cases all turn upon the proposition that no reasonable man would have anticipated the use which the servant made. There is no such situation here.

Upon the issue of the decedent's fault, what has already been said disposes of the claim of negligence as matter of law in his choice of a socket to be used in his work. The chief reliance of the defense is put upon the proposition that, conceding the propriety of using this socket, one in the exercise of reasonable care would have avoided contact with the high tension wire.

It must be concluded that the decedent's death was caused by his head, covered by his hat, coming in contact with or close to the charged wire. It must also be found that the work he was doing could have been done without his getting any part of his person within the danger zone. The question thus presented is whether a workman employed in a dangerous situation can be thought to be acting with ordinary prudence when he fails to avoid a known and avoidable danger. It is manifest that no dogmatic rule of law can

answer this query in all cases. Under some circumstances, failure to avoid must be found to be negligent. *Collins* v. *Hustis,* 79 N. H. 446. Under others, it becomes a question for the jury. *Boody* v. *Company,* 77 N. H. 208; *Nawn* v. *Railroad,* 77 N. H. 299; *Hurlich* v. *Railroad,* 81 N. H. 284.

The earlier cases afford but little aid toward the solution of such a problem, because in them the servant's assumption of risk was so frequently a controlling factor. The provisions of the employers' liability act, abolishing in this class of cases the defense of assumption of risk and changing the burden of proof upon the issue of contributory negligence (Laws 1911, *c.* 163, *s.* 2), have created a new situation. Recovery is no longer denied because the servant knowingly encounters a danger. It must also appear that there was negligent conduct involved in such encounter. Unless the proof is conclusive that the result could not have happened except through the servant's negligent inattention, the defendant was not entitled to a directed verdict.

In the present case there is no direct evidence to show how or why the decedent came within the danger zone. Cause for the contact is not established. Burns upon the decedent's hat, head and hands tend to prove that his hands were on the metal post, presumably in the act of attaching the lamp to the socket, and that his hat touched or came near the charged wire. Why his head was within the danger zone is a matter left to conjecture. It may have been through negligent inattention to the situation. It may have resulted from a cause like slipping or losing his balance on the ladder, or from something else causing unintended movement. The testimony of an expert as to a brush discharge, capable of transmission over a substantial space and tending to cause involuntary action, suggests another solution of the problem. The evidence of the decedent's habitual care in the presence of charged wires tends to negative the idea of negligent contact. *Parkinson* v. *Railroad,* 61 N. H. 416; *Greenwood* v. *Railroad,* 77 N. H. 101. Any of the other suggested causes would, or might, negative the imputation of his negligence. None of these propositions is conclusively disproved by the evidence. It may be conceded that none of them is proved, and still the decision on the motion to direct a verdict must be against the defendant. Whether the balance of probabilities is against them, so that a jury should find that it was affirmatively shown that none of them existed, is not a matter to be decided here. *Nawn* v. *Railroad,* 77 N. H. 305.

Where the facts surrounding the accident are fully disclosed, the statutory change as to burden of proof upon the issue of contributory negligence does not affect the question of law presented by a motion for a directed verdict. But when there is a lack of evidence, the change is important upon the issue here. *Collins* v. *Hustis*, 79 N. H. 446. The distinction is vital in the present instance.

The whole case as to what did or did not occur just before the accident depends upon inference. In some respects the inference is inescapable — *e. g.*, that the decedent received a shock from the charged wire. A jury would not be permitted to find otherwise. In other respects it is left in much uncertainty. Before the change as to burden of proof upon the issue of contributory negligence, this might have been fatal to the plaintiff's case. But now that the defendant must rely upon the conclusive and inclusive nature of its own proof, rather than upon the incompleteness of the plaintiff's case on this issue, such uncertainty is not a ground for taking a case from the jury. *Sevigny* v. *Company*, 81 N. H. 311; *Robinson* v. *Company*, 79 N. H. 398.

It is argued that the stepladder should have been placed on the easterly side of the post, where the socket was located, and that if this had been done there would have been no accident. The ladder was placed at the side of the post next the aisle, as one might naturally set it up. The post was a small iron affair, and reaching a quarter of the way around it, or even to the opposite side of it, would be an easy matter. There is not enough in this circumstance to charge the decedent with negligence as matter of law. It does not conclusively appear that ordinary men would not have acted as he did. *Miner* v. *Franklin*, 78 N. H. 240.

If this were a suit by the railroad to recover from the administratrix for damage to its appliances brought about through the decedent's negligence, it would be manifest that the plaintiff would not be entitled to a directed verdict. A verdict "is not ordered for the plaintiff because the defendant offers no evidence. It is only when from undisputed facts the only inference that can reasonably be drawn conclusively establishes the plaintiff's case that he is entitled to a verdict as matter of law." *Williams* v. *Duston*, 79 N. H. 490, 491. In the present case, the inference of decedent's fault was not the only one suggested by the evidence. But the evidence hardly goes beyond suggestion. It may well be doubted whether the state of the proof was such as to permit that or any other inference as to the details of his conduct to be drawn at all.

The facts shown are equally consistent with a theory of the accident which excludes the decedent's fault as with one which establishes it. ". . . in the absence of some evidence as to the fact, a judicial trial does not substitute an unfounded guess or conjecture for the legal proof which the law requires." *Deschenes* v. *Railroad*, 69 N. H. 285. It would seem that any attempted conclusion upon the issue of the decedent's conduct would be "pure speculation." *Chabott* v. *Railroad*, 77 N. H. 133, 137.

It is urged that Hussey had equal knowledge of the situation with the defendant, that they are held to the same standard of care and had the same freedom of action. From this it is argued that if the defendant was negligent so also was Hussey. The argument ultimately comes to this: A servant cannot recover for injuries resulting from voluntarily encountering a known danger. The proposition is in a large measure sound as a common law doctrine, and cases applying it are very numerous. The matter is fully considered in *Kambour* v. *Railroad*, 77 N. H. 33. One object of the employers' liability act was to change this rule. Laws 1911, c. 163, s. 2. The abolition of the doctrine of assumption of risk is not to be evaded by a holding that encountering a known danger is contributory negligence, as matter of law. The adoption of the argument here advanced would retain the doctrine in every instance where it was applicable before the statute was enacted. "The legislative mandate being that the doctrine of assumed risk shall not apply, it is the duty of the court to determine the rights of the parties as though that doctrine had never existed, rather than to defeat the legislative intent by so interpreting the discarded doctrine as to retain it in force and nullify the statute." *Oulette* v. *Company*, 77 N. H. 112, 115.

Assumption of risk being eliminated, the only remaining question involved in the theory here advanced is whether one who knowingly and voluntarily encounters a known danger is barred from a recovery based upon the wrongful creation of the danger. The matter received elaborate consideration in *Kambour* v. *Railroad*, 77 N. H. 33, and it was decided that "the facts that they knew of the danger incident to the condition of which they complain and voluntarily encountered it are not, in and of themselves, conclusive of their right to recover, unless the danger is so great that the ordinary man would not have done what they did. In all other cases these facts are merely evidence to be considered with other relevant facts on the issue of their care." *Ib.*, 49. "The mere fact that she voluntarily encountered a known danger does not establish the proposition that she was guilty

of contributory negligence." *Prichard* v. *Boscawen,* 78 N. H. 131, 133. To the same effect is *Boody* v. *Company,* 77 N. H. 208, a case in every way comparable to this upon the question now under consideration.

The doctrine of these cases is not to be rendered ineffective by a holding that proof of due care in the use establishes like care in the creation of the situation. There may be reasonable occasion to act in a dangerous situation which there was not reasonable occasion to create. It is not the mere creation of the situation on the one hand and the use of it on the other that settle the question of liability. The reasonableness of the conduct of each party is also to be considered. If this were not true, the decisions just cited would be unsound.

All the circumstances under which each party acted are to be taken into account. Excessive cost of different construction may be shown to justify the course adopted by the defendant. *Taylor* v. *Railway,* 48 N. H. 304, 316. The justification may be negatived by showing that the cost would not be large or unreasonable. *Spilene* v. *Company,* 79 N. H. 326, 330; *Haskell* v. *Railway,* 73 N. H. 587.

So too, in considering the conduct of the servant, the opportunities to avoid the situation and the reasonable demand for action on his part are to be taken into account. The contention that in this case the servant knowingly and without reasonable occasion encountered the danger is not conclusively shown, for the reasons before stated. It is not certain that he knew of the other outlets, or that there was no danger from charged wires at those points, and he may have had occasion to use the appliances on the post to switch the current on.

Since there was some evidence that the defendant's conduct was unreasonable, and the proof was not conclusive that the decedent's conduct was not reasonable, the case was one for the jury and the defendant's motions were rightly denied.

The exceptions to expert evidence, upon the ground that there was no evidence of the existence of the conditions assumed, is unavailing, "since the jury were expressly instructed that a verdict for the plaintiff must be based upon evidence and not upon conjecture." *Brito* v. *Company,* 79 N. H. 163, 164.

*Exceptions overruled.*

All concurred.

ON REHEARING. After the foregoing opinion was filed the defendant moved for a rehearing upon its exceptions to evidence.

*Demond, Woodworth, Sulloway & Rogers,* for the motion.

PEASLEE, C. J. The defendant's motion is based upon the propositions that the expert testimony was not admissible for any purpose, and that the instruction that the verdict must be based upon the evidence and not upon conjecture did not cure the error in the reception of the evidence.

The testimony, to the introduction of which exceptions were taken, related to the action and effect of electricity under certain circumstances. It was to the effect that the slight shock one might receive from the lighting circuit would be likely to cause involuntary motion, and that if the load on the high tension wires ran up, as it sometimes did, the current would jump a greater space than when the load was less. It was objected to upon the ground that there was no evidence that the conditions described existed at the time of the accident, and it was "admitted for what it is worth." There was evidence that the conditions may have existed. There was no request to limit the use of the evidence.

The defendant's case on the decedent's care rests upon the proposition that he negligently came in contact with the wires. There was no direct evidence that he did so; and the defense must be sustained, if at all, upon the proposition that all other hypotheses of how the occurrence came about are excluded by a balance of the probabilities. The proposition is like in kind to that presented when guilt of crime is sought to be shown by proof of exclusive opportunity.

In this situation it was open to the plaintiff to show one or many other ways in which the result might have been caused. She was not bound to prove that any of them was the cause in fact. Of course the more closely any of them was linked to the occurrence the greater its value in destroying the inference the defendant sought to draw. As the intimacy of their relation decreased the remoteness of the evidence increased.

Reliance is put upon *Nadeau* v. *Stevens,* 79 N. H. 502, as authority against the admission of this evidence. In that case the plaintiff relied upon the negligence of B in tightening a brake rope, thereby causing a gear to break. There was no evidence as to B's conduct at the time. It was held that expert evidence that such action would cause the result was improperly admitted, and judgment was ordered for the defendant. If there had been a claim that the gear must have been defective, because the break would not have occurred if it had not been, the evidence would have been admissible, as tending to show another cause which may have operated and therefore tending to deny the claim of exclusive chance for causation.

In that event, as in the present instance, evidence tending to show that something else may have been the cause would be admissible in answer to the exclusionary claim. The rule has been most frequently invoked in criminal cases, but it applies to civil suits as well. Typical instances of its use are those presenting questions as to exclusive opportunity, motive, threats and the like. But it is not confined to such instances. It is a general rule.

"Of the other kinds of evidence, it can only be said that the inclination should always be to admit any one of them, unless totally without probative suggestion." 1 Wig. Ev., s. 142; see, also, *Commonwealth* v. *Trefethen*, 157 Mass. 180.

The object of the evidence here introduced was not primarily to prove that the suggested causes were in operation. Its office was to show that they may have been. The plaintiff's task was to destroy the defendant's case on this issue, not to build a stronger one. The evidence was introduced to show the weakness of the inference the defendant sought to draw. To do this it was not necessary to establish a stronger inference. It was only necessary to prove circumstances of sufficient weight so that any balance of likelihood in favor of the defendant's position was overcome.

While the admission of this class of evidence may not have been passed upon in this jurisdiction, the principle involved has been recognized as sound; and such proof has frequently been the controlling factor in close cases. The instances are numerous where an inference of a fact has been deemed not to be well grounded because the circumstances in proof showed that other inferences might be drawn. That matter has frequently been discussed, and the competency of the facts as evidence seems never to have been questioned. *Deschenes* v. *Railroad,* 69 N. H. 285; *Dame* v. *Car Company,* 71 N. H. 407; *Reynolds* v. *Company,* 73 N. H. 126; *Boucher* v. *Larochelle,* 74 N. H. 433; *Lockwood* v. *Company,* 76 N. H. 530; *Dingman* v. *Merrill,* 77 N. H. 485; *Castonia* v. *Railroad,* 78 N. H. 348; *Upton* v. *Company,* 81 N. H. 489, and cases cited.

"'Arguments upon evidence are generally arguments from effects to causes; and in proportion as the number of possible causes of a given effect increases, the force of the argument is diminished. . . .' J. F. Stephens Cr. Law, 307." *Darling* v. *Westmoreland,* 52 N. H. 401, 411.

The evidence was also admissible upon the issue of the defendant's fault in maintaining the combination of appliances it did. The question being whether a reasonable man would construct a work place

in so dangerous a fashion, it was of course permissible to show any and all dangers that were involved in such a situation.

This conclusion necessarily follows from the fundamental rule concerning anticipatory obligation. Precautionary duty is dependent upon reason to apprehend results. *Shea* v. *Railroad*, 69 N. H. 361; *Minot* v. *Railroad*, 73 N. H. 317; *Blood* v. *New Boston*, 77 N. H. 464; *Martel* v. *White Mills*, 79 N. H. 439; *Cunningham* v. *Spaulding*, 80 N. H. 335; *Kenney* v. *Len*, 81 N. H. 427; *Derosier* v. *Company*, 81 N. H. 451; *Tullgren* v. *Company, post.*

It was not essential that the plaintiff should show that all these dangers entered into the causation of the accident. All foreseeable dangers are to be considered in the solution of the problem whether the creation of the situation was a negligent act. If there were ten foreseeable contingencies, their existence might make the creation of the situation negligent, although it might not have been so if only one of the contingencies had existed. *Collins* v. *Hustis*, 79 N. H. 446, 449. When several exist, and their existence makes the creation of the situation negligent, injury resulting from any one of them makes the defendant liable. *Ela* v. *Cable Company*, 71 N. H. 1. The others are provable in such a case, not to show the cause for the accident, but to establish the defendant's fault in creating or maintaining the cause.

If it is conceded that the evidence was not sufficient to warrant a finding that Hussey was killed because he put his finger into the light socket, or because there was an unusually high voltage which increased the distance the current would jump, the evidence was still properly in the case, for the purposes before indicated. The jury were instructed generally that their verdict must be based upon the evidence and not upon conjecture. If the defendant desired more specific instructions, or a ruling that a verdict could not be found upon those grounds that were not sufficiently shown, it should have made the appropriate requests. *Lord* v. *Railway*, 74 N. H. 295.

The statement in the former opinion of the law governing the situation is too brief and too general. It is not to be taken as a declaration of a rule applicable to evidence not properly in the case for any purpose. The opinion or expert evidence being properly in the case for one purpose, its reception and use was not made error because there were no facts in evidence to warrant another use. *Dow* v. *Merrill*, 65 N. H. 107, and cases cited; *Cobb* v. *Follansbee*, 79 N. H. 205. In the absence of special requests, the general in-

struction that the verdict must be based upon the evidence was sufficient.

*Former result affirmed.*

All concurred.