Merrimack, }
Dec. 1, 1931. }

JOSEPH P. MORRIS *v.* BOSTON & MAINE RAILROAD.

GEORGE LARO *v.* SAME.

*Robert W. Upton, Joseph C. Donovan* and *Laurence I. Duncan* (*Mr. Upton* orally), for the plaintiffs.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

SNOW, J.   Accepting the plaintiff's statement of the facts as true, it is clear that the collision would not have occurred if he had not stopped his car in the way of the oncoming train.   If he is bound by

his testimony, and if it conclusively appears therefrom that he was negligent in the placement of the car in the way of the train, the negligence of the defendant's servants prior to his act in bringing the car to a stop is immaterial.

One of the vital facts in issue between the parties at the trial was whether the automobile was in motion or at rest when struck by the locomotive. The plaintiff testified that the car came to a stop west of the rail but before the car was in clearance of the path of the locomotive, and that it remained there during his inquiry of the agent, and the answer, and while he looked toward the train. All of the other eye witnesses to the collision, four in number, testified that the locomotive hit the car while it was moving across the track. Whether or not the car came to a stop, was a fact peculiarly within the plaintiff's knowledge. His statement that it stopped was clear and unequivocal. His testimony was either true or deliberately false. In either event, he is bound by it in so far as it affects the determination of his rights. *Harlow* v. *Leclair*, 82 N. H. 506, 512; *Fraser* v. *Railway*, 84 N. H. 107, 111; *Saidel* v. *Society*, 84 N. H. 232, 233; 50 A. L. R. 980.

It may be conceded that the conduct of the defendant's agent was a circumstance bearing on the plaintiff's care in approaching the main track without looking to the north. But the signal to come across the track and stop for a conference, as the plaintiff interpreted the agent's act, did not include an invitation to come to a stop in the way of a possible train. No such claim is made by the plaintiff. There was nothing in the agent's signal as understood by the plaintiff, which called for a precipitate stop. It was not the case of a mistake in judgment in a situation where there was a restricted field of action. *Bridges* v. *Company*, *ante*, 220. There was no limit to the distance he could have proceeded across the track before bringing his car to a stop. He had no intimation as to how long the conference with the agent was to last. According to the plaintiff's chalk, used in evidence, some portion of his car when hit was astride the westerly rail of the freight house track if not above the rail of the main track. He had worked on the block signal at this point, was familiar with the crossing and described the customary traffic across it. He testified that the accident occurred about one o'clock; that he knew a train was due to pass between twelve and one; that he "didn't know whether it had come or not;" that he had it on his mind as he "started across that crossing that a train might be coming;" that he was thinking of the possibility of "a train coming from the north;" that he knew it was a dangerous thing to stop where he might be hit by a train. It could not be found

that a man of ordinary prudence, with the plaintiff's knowledge, under such circumstances, would stop in the path of a possible train on the main track without first having exercised all his available senses to determine whether a train was approaching and if he was in clearance. He had traveled forty-five feet at five miles per hour since he had looked north. His conduct in thus stopping his car where it would be hit by a passing train without looking and taking simple precaution whether he was in clearance was conclusive evidence of his negligence. See *Bursiel* v. *Railroad*, 82 N. H. 363, 367, 369.

It follows that the plaintiff can recover, if at all, only under the last clear chance doctrine. The doctrine has no application here unless the engineer saw the plaintiff, or otherwise knew of his presence, after he was in a position of danger from which he could not extricate himself in season to have stopped the train before the collision; or unless the agent, after seeing the car stopped, or coming to a stop, in the path of the engine, knew or ought to have known that the plaintiff was oblivious to his peril, and could thereafter have apprised the engineer thereof in season for the engineer to have avoided the collision. *Olsen* v. *Railroad*, 82 N. H. 120, 124; *Bursiel* v. *Railroad*, 82 N. H. 363, 370; *Jones* v. *Railroad*, 83 N. H. 73, 81, and cases cited; *Webster* v. *Seavey*, 83 N. H. 60, 62; *Stocker* v. *Railroad*, 83 N. H. 401, 403. It is true that the jury was not bound to believe the statement of the engineer that he did not see the car until after the impact. A finding that he saw it in season to have avoided the collision could be based on other substantial evidence, if any, from which the deduction could be reasonably drawn. *Collette* v. *Railroad*, 83 N. H. 210, 213. In other words, in so far as the negligence of the engineer is here relied upon, there must be evidence from which reasonable men, on the balance of probabilities, could find that the engineer did see the car and by the exercise of due care could have stopped the train in season to save the plaintiff from the dangerous situation in which he had negligently placed himself. The mere fact that the car or some part of it was within his possible vision when the train was at the minimum distance in which it could have been brought to a stop, does not warrant a finding that he saw the car in season to avoid the collision. To so hold would be to disregard the fact, which is of common knowledge, that the human senses, mind and muscles do not act and respond one to another, instantaneously or with mechanical precision. The conclusion that the engineer saw and could have acted effectively must be a reasonable deduction from the situation in which he was placed, having in mind the normal human limitations. Any rational con-

sideration of the issue must include the engineer's position, the area and the objects therein which he was required to keep under observation in the performance of his duties, the range of vision necessary to include such area and objects, the physical limitation of his view easterly by the front of a moving engine of the Pacific type, the distance the car projected westerly past the easterly line of his vision, the length of time any part of it was within his possible view, the emergency under which he was required to act, if at all, (*Carney* v. *Railroad*, 72 N. H. 364, 372; *Precourt* v. *Driscoll*, *post* 280) and the time required to transmit into effective brake action the information acquired by his observation.

The uncontradicted evidence as to the position of the engineer and his view easterly was that he was sitting on his seat, on the right hand side of the locomotive, keeping a lookout from the side window; that 674 feet away he could see three tracks on the crossing; that the boiler, which extended forward thirty-three feet, restricted his view as he approached the crossing; that at a point 200 feet from the crossing his view easterly was limited to the west rail of the passing tract A and from that point rapidly lessened until he could see no farther east than the westerly rail of the main track. It must be conceded that his duties were not limited to watching the point on the crossing where a car approaching from the east might emerge past the front end of the locomotive. It is a matter of common knowledge that his duty required him to be on the lookout for danger at all points within the compass of his view including cars approaching from the west, as well as persons on the station platform, and for signals from the station agent. It appears that the crossing was a blind crossing to persons approaching from the west and that the engineer saw the agent upon the platform.

The only evidence bearing on the position of the car when at rest, with reference to the westerly rail of the main tract, was the plaintiff's expressed doubt whether his car was in clearance after he glanced at the approaching train, and the undisputed facts that the car was an open "old type Ford" of 1922 model, that the front end of the engine struck the right rear mudguard of the car, and dented the car body on the right near the rear, and that the impact removed the rear wheels and turned the car about so that it faced easterly.

On the evidence most favorable to the plaintiff the car was stationary prior to the time he saw the train 128 feet away, only for the period consumed by his inquiry of the agent, the latter's reply and the turning of the plaintiff's head to the north. To find the maximum time

any portion of the car projected beyond the westerly rail of the track we may add the time consumed while it was proceeding the distance which any portion of the car was in the engineer's possible vision while coming to a stop from a speed of five miles per hour. The plaintiff testified that, at the speed he was traveling, he could stop the car while traveling a distance of two feet. No direct evidence was submitted as to the time these events took. On the plaintiff's statement, however, the time at best was momentary, and as we have said before he is bound by his own testimony.

The evidence taken most favorably for the plaintiff is that the train was traveling between fifteen and twenty miles per hour and that it could be brought to a stop in the distance of 140 feet. The distance, however, at which the engineer must have seen the car in order to have taken effective action to save the plaintiff is necessarily materially greater that 140 feet, since an appreciable time was required for the unexpected presence of the car in the place of danger to register on the mind of the engineer, for the engineer to reach for the brake lever and for the brake to operate.

In considering the agent's conduct, so far as it was material to the application of the last clear chance doctrine, it must be kept in mind that the collision would not have occurred if the car had not stopped in the way of the train and that the negligence of the plaintiff was concurrent with any want of care on the agent's part during the time the car was in the act of stopping, and was stopped, up to the time the plaintiff looked north. *Batchelder* v. *Railroad*, 72 N. H. 528, 530. Moreover, some time was required for the agent to appreciate that the car was coming to a stop within the path of the train and to have signaled the engineer, and for the engineer to have acted.

It would be mere conjecture on the evidence, to say that either the agent or engineer actually saw the car stopped, or in the act of stopping, in season to appreciate the plaintiff's danger and to have transmitted such appreciation into an effective application of the brakes in time to have saved him from the result of his own negligence. *Collette* v. *Railroad*, 83 N. H. 210, 213, 218; *Johnson* v. *Railroad*, 83 N. H. 350, 364. It follows that the evidence did not warrant the application of the last clear chance doctrine. The defendant's motion for a directed verdict, as respects the plaintiff Morris, should have been granted.

Morris was granted the use of the car for the afternoon and was proceeding on his own mission when the accident occurred. There was no evidence or claim that he was an unsuitable person to be en-

trusted with the car. The fact that he was to return to Rolfe's sheds for Laro at five o'clock does not conclusively establish that he was either the servant or the agent of Laro. Laro was therefore neither chargeable with Morris' negligence (*Groatz* v. *Day*, 81 N. H. 417, 418, and cases cited) nor bound by his testimony. It could be found that the car was hit while crossing the main track; that it approached the crossing at five miles per hour and could have been stopped in a distance of two feet; that for a distance of forty-five feet he was looking away from the train; that the fireman was sitting on his seat keeping a lookout by the side window and saw the car approaching the crossing. It could be found on this evidence that the fireman was negligent in failing seasonably to discover the presence of the car on the crossing and the inattention of the driver, and in failing to warn him of the danger; and that such negligence was causal. It could also be found that the defendant was negligent in failing to sound the whistle when within five hundred feet of the crossing and that such negligence was a cause of the injury to the car. This subject is later treated at length. These conclusions make it unnecessary to consider the alleged negligence of the agent. The defendant's motion for a directed verdict in Laro's action was properly denied.

Subject to exception, the plaintiff was allowed to show by the engineer that, in addition to giving the statutory whistle 1320 feet from the crossing (P. L., *c.* 249, *s.* 23), it was the practice when approaching highway crossings at grade to sound one long blast within 500 feet of the crossing. The ground of the exception is that, as this is a private crossing, the practice at highway crossings was immaterial, confusing and prejudicial.

The evidence was competent on the issue of the plaintiff's care, in explanation of his conduct in relying upon a whistle within five hundred feet of the crossing. The plaintiff had testified that he was listening for a train and heard no whistle prior to two short blasts sounded just before he was hit; that he expected to hear a crossing whistle if a train was coming; that from his observation of trains at other grade crossings "they always blow their whistle" within 500 feet from the crossing, and that he did not know of any different practice here. *Jordan* v. *Railroad*, 80 N. H. 105, 106.

The evidence was also competent as tending to show knowledge by the defendant of the inadequacy of the statutory signal, 1320 feet away, to protect travelers under the conditions which exist at highway crossings, and, perforce, the need of additional protection in similar situations. *Bridges* v. *Company*, *ante*, 220 and cases cited. There was

evidence tending to show that many of these conditions existed here. It was shown that considerable use was made of the crossing by motor vehicles; that the crossing was a "blind" one to a driver approaching from the west. There was evidence that the view of travelers from the east was limited by structures situated north of the crossing. The contention of the defendant that the traffic was not comparable in speed or quantity to that on a highway merely presented a question of fact for the jury. The crossing was a private crossing maintained by the defendant as public. On the evidence it could be found that due care required the same protection accorded to travelers on public crossings. *Stocker* v. *Railroad*, 83 N. H. 401, 404. The relevancy of the evidence in the instant case differs from that in the *Stocker* case in that here comparison is made with the protection afforded at grade crossings generally, while in the case cited the comparison sought to be made was with that of particular crossings.

The record discloses no misuse of the evidence. On the contrary the distinction between the rules and practice required and followed at public crossings and those applicable to private crossings was later fully shown, and the jury were told that there was no evidence on which "any breach of statutory duty in respect to whistling" by the defendant could be found; that the defendant's duty was to give reasonable warning in view of all the circumstances; and that "if upon all the evidence you find that the situation at this crossing was such that reasonable care and prudence required that when trains were approaching it the whistle should be sounded and the bell rung, as they are at highway crossings, it was the duty of the railroad to provide such safeguards," and that it was for the jury to say whether or not the whistle sounded 1320 feet away was all that reasonable care and prudence required.

It is not perceived how the evidence excepted to could have confused or unduly prejudiced the jury. Where the evidence is admissible for one or more purposes and it is capable of use for an incompetent purpose it was the right and duty of the party aggrieved to request that its use be limited. *Lord* v. *Railway*, 74 N. H. 295, 298; *Hussey* v. *Railroad*, 82 N. H. 236, 245. No request was made. The defendant takes nothing by his exception.

There is no merit in the defendant's exceptions to the plaintiff's argument commenting on the failure of the defendant to produce the fireman in person. The other exceptions to the denial of requests and to the allowance of arguments, so far as urged, relate to the suit of the plaintiff Morris. In view of the conclusions reached there is

no occasion to deal therewith, and they have not been considered.

*Judgment for the defendant in the first action.*

*Judgment for the plaintiff on the verdict in the second.*

All concurred.

ON REHEARING. After the foregoing opinion was filed the plaintiff, Morris, filed a motion for rehearing, supported by a brief claiming error in the application of the principle of *Harlow* v. *Leclair*, 82 N. H. 506, 512, and in the conclusions reached upon the issues of contributory negligence and the last clear chance doctrine.

*Robert W. Upton*, for the motion.

*Demond, Woodworth, Sulloway & Rogers*, opposed, were not asked to furnish a brief.

SNOW, J. I. It is argued that the evidence admits of a finding that the plaintiff was honestly mistaken in assuming that his automobile had come to a stop before the collision, and that, therefore, he should not be bound by his testimony to that effect. In support of this argument counsel invokes the explicitness of the testimony of the five eye witnesses, whom he qualifies as "attentive to the circumstances of the accident" and "in a position to know," four of whom testified positively that he was struck while moving across the track. While this evidence tends strongly to show that the plaintiff was wrong in his statement of the fact it does not support the conclusion that he was honestly mistaken. On the contrary it tends rather to refute the claim that the plaintiff could have honestly believed in the happening of the events which he enumerates in his testimony. On direct examination the plaintiff was clear and unequivocal in his statement that he came to a stop. Upon cross-examination he undertook to strengthen this position by giving circumstantial details of what occurred while he was stopped. In addition to his assertion that he was "standing still" when he made his inquiry of the agent, he said that, "after his car came to a stop", he "threw the gas lever up" because the motor "was racing," and that the motor then stopped; that he "was stopped before the motor did"; that when he saw the train com-

ing he "stepped on the starter"; that the starter operated properly but "the engine did not start" because of the position of the gas lever. These detailed facts were matters peculiarly within his knowledge as to which he could not be mistaken. Recalled after the five witnesses had testified, he offered no explanation of the direct conflict in the evidence, and made no suggestion that he might be mistaken. On the other hand he confirmed his former position by the statement that he looked to the north again after he "passed the main track and was stopped." We fail to find anything in the record to support the claim that he was confused or uncertain as to what he actually did. On the contrary he showed himself a keen witness, and denied any want in the clearness of his recollection. Having testified positively in a matter deemed vital to the merits of his case, and in direct conflict with all the other witnesses, it would not be "consistent with honesty and good faith" to allow him now to rest his case on such opposing evidence on the ground that he was honestly mistaken. The case comes clearly within the doctrine of *Harlow* v. *Leclair, supra,* and the other cases cited in the opinion.

II. It is urged that, assuming that he stopped in the way of the train, his fault is not conclusively established since he supposed he was in clearance. The argument advanced is that a mistake of judgment is not negligence as a matter of law. The answer is that this abstract proposition has no application to the facts here. This is not a case where the plaintiff, suddenly finding himself without fault in a perilous position, might be found excusable for errors of judgment in extricating himself therefrom. The negligence charged here consisted of his conduct in placing himself in the hazardous position. His duty to himself and the defendant called for action which would exclude any chance of error of judgment. He had no right to stop as close to the track as he could and escape collision with a passing train. His duty was to get clear of its path beyond question. Another car length would have placed him outside the realm of danger and have dispensed with any occasion for the exercise of judgment. His desire to comply with the station agent's request for a conference would not have been defeated by the fact that he would be a car length further on his way.

It was not a case of distracted attention. He thought upon the subject of clearance and concluded that he was safe. Nor was it an instance of choosing between two dangerous courses of action in an emergency. His choice was between the normal and obviously safe course and one fraught with manifest peril.

The cases on which the plaintiff relies are plainly distinguishable. In *Robinson* v. *Company*, 79 N. H. 398, 399, an inexperienced boy of seventeen had been instructed to oil machinery while in operation, which could be done without injury if sufficient care was exercised. The fault charged was that "as the plaintiff was injured he did not exercise such care." It was pointed out that "The danger consisted in the possibility that from misjudgment as to position or momentary forgetfulness or inattention some portion of the operator's person or clothing might come near enough to the revolving gears, in close proximity to which the oiling operation was to be performed, to be caught between them." It was then said: "Whether in a particular case such misjudgment, inattention, or forgetfulness is negligence is plainly a question of fact." This falls very far short of a holding that misjudgment as to clearance of danger, when there is full opportunity to avoid possibility of danger and the occasion to use judgment, can be found to be the exercise of due care. In *Sevigny* v. *Company*, 81 N. H. 311, 313, the plaintiff's hand came in contact with unguarded machinery when a screwdriver slipped as she was tightening a screw. It was held in terms that "In view of the evidence that there were dangers involved in stopping the machine and that it was the practice to do this work in the way the plaintiff did" the issue of her care was for the jury. This affords no warrant for the conclusion that one can be found to be careful in voluntarily choosing a position of known danger when a place of obvious safety was equally open to him and the normal one to be taken. In *Lacasse* v. *Atwood*, 80 N. H. 384, 386, the language of *Robinson* v. *Company* is quoted as applicable to the conduct of a sixteen year old boy in failing to discover, during the haste of his work, that a board he was about to run over a grooving machine was cross-grained and therefore likely to break. In *Hill* v. *Company*, 81 N. H. 190, there is a like quotation, in application to an inexperienced, uninstructed servant, working in haste in a dimly lighted place, and coming in contact with a board used as a prop to hold up a heavy door, there being many such boards standing about, with no apparent use or purpose. In *Hussey* v. *Railroad*, 82 N. H. 236, *Robinson* v. *Company*, *supra*, is cited but to another point. To these cases may be added *Folsom* v. *Railroad*, 68 N. H. 454, where it is said "a mere error of judgment is not necessarily negligence." But, as there pointed out, the plaintiff found himself suddenly in danger whatever action he might take.

None of these cases offers any precedent for a holding that it could be found that this plaintiff was not negligent. It may be conceded

that he made the guess of the average man when he concluded that he was in clearance. If that were the test of his due care he could be found not to have been negligent. But the average man would not have rested upon any such doubtful assurance of safety. The safe course was entirely open and apparent. Its adoption involved no issue of either safety or desirability.

If the plaintiff was not in fault in thinking that he was in clearance, he was derelict in acting upon such a belief upon anything less than the conclusive evidence of its truth which movement to the extent of another car length would have afforded. The exercise of the plaintiff's best judgment of course does not excuse him. He must do as well as the average man. That such a man would not rest upon his mere judgment that he had arrived at a point where he would escape great peril, and stop on the debatable ground, when a normal continuation of his movement for a few feet would put peril out of the question, seems a reasonable proposition to state as matter of law. But what he thought, or did not think, is immaterial, if thought is used in the sense of deducing conclusions from facts. While his knowledge is a circumstance to be considered upon the issue of his due care, yet the mental operation which is sometimes used in testing for due care is not that of the actor. "The thoughts, as well as the physical acts, of the average man constitute the standard . . . knowledge is a material factor in the problem, but the judgment to be exercised in view of that knowledge is that of the average man." *Sevigny* v. *Company, supra.*

But it may be said that his observation told him he was in clearance and that was a fact to him. Hence, it might be argued, his acting upon that fact cannot be treated as negligence. The answer is that already indicated. If he reasonably believed that he was in a safe place, he also knew that the margin of safety was small, that the chance of injury was great, and that there was no reasonable excuse for not making the margin ample beyond doubt. Taking hair breadth chances, when there is no occasion to take any chance, is negligence, as matter of law. Reasonable men do not take such chances.

III. Counsel's argument that it could be found that the agent and the fireman respectively had the last clear chance to act while the car was approaching the crossing loses sight of the facts that the car would not have been hit if the plaintiff had not stopped in the way of the train, and that he was conclusively shown to be contributorily negligent up to the time he tried to start the car. It is grounded on

the position that the agent and fireman, one or both, might have signaled to the engineer in season *to have prevented the plaintiff from negligently stopping* in the way of the engine. This is not the last clear chance doctrine.

The plaintiff further sets up a computation based upon the estimated speeds and distances traveled by the automobile and engine from which, it is reasoned, an inference could be drawn that the car came into the engineer's view when he was three hundred feet from the crossing. It is argued that, on this combination of estimates, it could be found that the engineer *actually saw* and should have appreciated the plaintiff's predicament at that distance. The result of the computation is in the teeth of the plaintiff's testimony. He was positive in his statements that he was stopped before he looked north only long enough to receive a reply to his inquiry and to turn his head to the north, and that the engine was then at a point 128 feet away and that he was hit almost instantly as he put his foot on the starter. If the plaintiff were not bound by his testimony so explicitly limiting both the time and distance (*Harlow* v. *Leclair, supra*), such a combination of estimates is not the *substantial* evidence required to show that the engineer actually saw the car. *Clark* v. *Sharpe*, 76 N. H. 446, 447; *Russell* v. *Railroad*, 83 N. H. 246, 249. Moreover, the result reached is based upon so many fallible elements in the computation that a finding based thereon would be no more than mere conjecture.

*Former result affirmed.*

All concurred.