Carroll,
Dec. 6, 1932.

OSCAR D. YORK *v.* STEPHEN W. CLOW.

Transferred by *Young*, J.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Franklin Hollis* orally), for the plaintiff.

*Hughes & Burns* (*Mr. Burns* orally), for the defendant.

MARBLE, J.   The defendant, who owned and operated a sawmill in Wolfeboro, employed the plaintiff, an independent contractor, to repair the safety-valve of a steam-boiler located in the mill.   The blow-off or waste-pipe ran from the safety-valve out through the south wall of the boiler-room about nine feet from the ground.   The engine-room adjoined the boiler-room on the east, and the two rooms were separated merely by a movable pipe-rail.   The dynamo-room adjoined the boiler-room on the west.

After the plaintiff had repaired the valve, he took his tools to the chest in the dynamo-room and remained there while steam was being generated in the boiler.   The valve could not be properly adjusted until this was done.   While waiting there, he heard the sound of escaping steam, and was unable to determine, without looking at the end of the waste-pipe, whether this steam was coming from the valve or from leaks in the boiler.

There was a window in the dynamo-room from which the waste-pipe could be seen.   Near this window the defendant had piled lumber.   The stacks were placed on the foundation of an old dynamo which had been removed from the room some years before.   These stacks which were four or five feet high, ran north and south, and

were supported by a line of posts situated about eight feet from the east wall. There was a passageway between the posts and the wall by which the window could be reached.

Sometime before the plaintiff's arrival on the premises, the row of boards nearest the posts had been removed, leaving a space on the west side of the posts and parallel with the passageway variously estimated as from twelve to eighteen inches in width. The plaintiff was proceeding along this narrow space to the window when some of the lumber fell on him and caused the injuries for which he seeks to recover. The space in question was somewhat obstructed by two pieces of shafting, each three inches in diameter, which were located on the stone foundation. It was suggested at the trial that the plaintiff was engaged in measuring this shafting when the accident occurred, but this he denied.

The rule is elementary that a landowner's legal duty to an invitee to keep his premises in a safe condition does not extend to those portions of the premises which there is no reason to expect the invitee will occupy. *Lavoie* v. *Company*, 79 N. H. 97, 98; *Straw* v. *Company*, 76 N. H. 35; *Morrison* v. *Company*, 70 N. H. 406.

The passage east of the posts and on the plaintiff's left led directly to the window. If the plaintiff had taken this route and the boards had fallen, the posts would have protected him. It is true that there were a few boxes and oil-cans along the east wall, but the passageway was clear and unobstructed for a width of at least three or four feet. The excuse which the plaintiff gives for failing to take this route is not a very plausible one. He testified: "I didn't take the straight line course, for some reason. . . . I can't remember now just what the reason was, but I think there was some oil cans in there, or something, in this direct line; . . . some reason why I didn't go right direct." And on cross-examination: "Q. You didn't take the nearest course there, did you? A. Not exactly straight, no. Q. The oil cans were piled along on the boiler wall, weren't they? A. Yes; and other things were there too, besides oil cans. Q. That isn't what prevented you from going that way? A. No: I could have gone that way."

There was a door near the southwest corner of the dynamo-room opening directly into the mill-yard. By taking a few steps beyond this door, the approach to which was unimpeded, the plaintiff could have seen the waste-pipe plainly. He would have had an equally clear view by raising either of two windows in the engine-room, where most of his work had been done and where he would have to go to complete it. The reason suggested for his failure to use one of these

windows is that he would have had to step upon a bench and open and close the window.

According to the defendant's evidence, the dynamo had been dismantled in 1912. The room was then used for general storage, but lumber had not been regularly piled there until 1928, three years before the accident. The lumber was "on display, for sale." The stack nearest the posts had been sold and subsequently removed. It was perfectly obvious that this space was not designed for a passageway. The plaintiff, who was thoroughly familiar with the defendant's mill and with sawmills in general, entered the unprotected area voluntarily and in broad daylight. The case differs in this respect from *Cable* v. *Donahue*, 85 N. H. 258, on which the plaintiff relies.

Counsel seek, however, to bring the case within the rule of *Colby* v. *Treisman*, 85 N. H. 19, by suggesting that it could be found that the plaintiff had taken "practically the same course thru there" on one at least of the four occasions when he had repaired the valve during the past twenty years and that the defendant and his engineer had been present and made no objection.

Assuming that one or two remote instances of the kind claimed would be sufficient to charge the defendant with the duty of anticipation, the plaintiff must nevertheless fail because his testimony on that issue is far too indefinite to admit of anything more than a conjectural finding.

The plaintiff did not testify unequivocally that the course he had taken before had been between the posts and the lumber. While he stated that lumber had been "piled up there in the same place," he did not say that a row of boards had been removed. He "walked down by" the boards, to be sure, but this statement would describe his conduct just as accurately if he had walked on the left of the posts. He testified on direct examination that he didn't think he "went exactly on the same course" then as at the time of the accident. And again on cross-examination: "I don't know as I had been through that narrow space just as it was then."

He did testify, however, that he had been through a similar space, it "might have been four years" before. But when asked where the defendant was at the time, he answered that "he was probably around this door." And later: "I can't tell you because I didn't take any notice of it." With reference to the engineer's presence he testified that he "would probably be" near the tool-chest.

This testimony falls far short of the direct and positive assertions of the plaintiff in *Colby* v. *Treisman*, and is insufficient to justify a

finding that the defendant ought to have anticipated the plaintiff's presence in the narrow space between the posts and the lumber-pile.

This conclusion makes it unnecessary to consider the other questions which have been argued.

*Judgment for the defendant.*

All concurred.