Rockingham,
March 4, 1941. No. 3199.

ELLEN M. WELLS *v.* C. JEROME O'KEEFE.

FLYNN J. WELLS *v.* SAME.

MARY LANE *v.* FLYNN J. WELLS.

ANNA G. O'KEEFE *v.* SAME.

C. JEROME O'KEEFE *v.* SAME.

*James L. Sullivan* and *Demond, Sulloway, Piper & Jones* (*Mr. Piper* orally), for Flynn J. Wells and Ellen M. Wells.

*William H. Sleeper* (by brief and orally), for C. Jerome O'Keefe, Anna G. O'Keefe, and Mary Lane.

MARBLE, J.  The excepting parties contend that the only evidence "to support the findings that Wells was and O'Keefe was not guilty of negligence contributing to cause the accident" is the testimony of O'Keefe himself, and that his testimony is too vague and self-contradictory to be entitled to any substantial weight.

The highway at the place where the accident happened comprised three lanes of cement, each approximately ten feet in width.  O'Keefe was driving north toward Portsmouth and Wells was driving south toward Massachusetts.  It was foggy and the lights of the motor vehicles on the road were lighted.

Shortly before the collision O'Keefe turned into the middle lane in order to pass a northbound truck.  After passing this truck he continued to drive in the middle lane for some distance.  The driver of the truck testified that he watched O'Keefe's car after it had passed him; that he saw a line of four or five automobiles in the west lane proceeding south; that O'Keefe "was still in the middle lane" where he remained until these cars got closer, when their lights seemed to affect him; that he pulled to the left as the lights struck his windshield and, after coming very close to the first car, collided with the last car in the line, which was that driven by Wells.

O'Keefe stated that he was "quite a ways past" the truck before he met the line of southbound cars; that the wheels of these cars, he thought, were "over on the middle lane"; that the lights blinded him

so that he couldn't see where he was going; that after two or three cars went by, he stopped his car and set the brakes, and that he did not turn to the right for fear of being struck by the truck he had passed or of hitting some chance pedestrian who might be walking on the side of the road; that his car was within two feet of the westerly border of the middle lane when the Wells car struck it, and that the collision moved it only slightly, if at all.

Wells testified that his automobile was equipped with two fog lights in addition to the regular headlights and that all these lights were lighted at the time of the accident; that he did not dim his lights as he approached O'Keefe's car; that he was driving in the west lane and "gauging" his course "mostly by the right-hand side of the road" and that, to the best of his knowledge and belief, the collision occurred in the west lane.

A state-police employee, who was summoned to the scene of the accident, testified that he found O'Keefe's car very close to the west lane but within the limits of the center lane.

After a careful consideration of all the evidence we are of the opinion that the motion of Flynn J. Wells for a directed verdict in the actions against him should have been granted.

There is no statutory provision which applies in terms to three-lane highways. It is commonly understood, however, that the primary purpose of the center lane is to facilitate the overtaking and passing of traffic. The law of the road remains applicable, and a motorist who meets another traveling in the opposite direction is still required to turn seasonably "to the right of the center of the traveled part of the road, so that each may pass the other without interference." P. L., c. 90, s. 1; P. L., c. 103, s. 16. The jurors were so instructed.

O'Keefe refers in his testimony many times to the fact that the cars whose lights affected him were coming round a bend in the road, but the plan which he introduced as an exhibit indicates that the alleged curve is negligible. He could see for a distance of three hundred feet. His windshield wipers were working and the fog did not obscure his vision. According to his own testimony, he had passed the truck a hundred and fifty yards south of the point of collision and was fifty yards ahead of it before he became blinded by the lights.

He could not have seriously entertained any fear that the truck would run him down, for he described it to be "just crawling" at the time he passed it. He admitted that he had no reason to believe

that its speed had increased, nor, so far as appears, did he have any ground for anticipating that persons might be walking along the side of the road.

That he had ample opportunity to turn to the right is apparent from the following paragraphs of his testimony:

"Q. But . . . when you saw those automobiles coming toward you around the bend you were in the middle lane of the road? A. Yes, sir. Q. And there were no automobiles at your right, were there? A. No, sir. Q. And there was nothing which would prevent you from turning your car into your right lane, was there? A. No, sir. Q. But you didn't turn your car into the right lane, did you? A. I started when the cars got so close. Q. Well you didn't turn your car into the right lane, did you? A. Oh no. . . .

"Q. Now where was the first car of the line of cars going south when you stopped your car? A. Oh, they was two, I think there was two or three cars passed me. Q. What were you doing while those cars passed you? A. Well, I was driving along and started to go over to my right. Q. Had you made any attempt to stop your car at that time? A. No. It was after that when I see them getting closer. Q. So two or three cars passed you? A. I should think so. Q. As you drove along that middle lane? A. Yes. Q. And then what happened? A. Well, I noticed these cars coming closer, the lights were, so I put on my brakes and stopped my car."

Since this violation of the law of the road contributed to cause the accident and could not fairly be deemed justifiable, O'Keefe is precluded from recovery. *Hobbs* v. *Railroad*, 88 N. H. 112, 113, and cases cited.

Nor can O'Keefe's passengers recover against Wells unless Wells was guilty of some legal fault. It was suggested at the trial that Wells was negligent (1) for failing to keep a proper lookout and "to see where he was as he came along," (2) for failing to dim the lights of his car, and (3) for failing to diminish his speed at an alleged intersection.

Both Wells and the truck driver testified that the collision was caused by O'Keefe's sudden turn to the left. The photograph of O'Keefe's car, which he introduced as an exhibit, discloses a crushed headlight, fender, wheel, and running board, all on the left of the car. O'Keefe estimated the speed of the Wells car to be more than thirty-five miles an hour yet asserted that the impact did not move his own car "a particle unless it was turned just a little."

He expressed the opinion that after the accident his car "must

have been a foot and a half if not two feet" east of the west lane, but admitted that he "was taking those figures from Officer Philbrick." The officer testified, however, that the distance from the left front corner of the car to the west side of the road was ten feet, six inches; that the distance from the left rear of the car to that side of the road was fifteen feet, nine inches, and that the width of the two outside lanes was approximately ten feet. It is conceded that the Wells car came to a stop on the extreme west side of the road with its bumper against a stone wall.

From this evidence it could not reasonably be inferred that Wells at the time of the accident was encroaching on the center lane to any marked extent. Certainly such trivial encroachment as there may have been would not in and of itself constitute negligence. It is an undisputed fact that Wells was driving south in a line of cars and keeping his place in the line. The east lane was free from traffic for a considerable distance. Under such circumstances he had no reason to believe that the driver of any northbound car occupying the middle lane, with ample space on the right, would turn suddenly to the left or bring his car to an abrupt stop close to the boundary of the left-hand lane. In short, such unusual conduct as that displayed by O'Keefe cannot fairly be held to fall within that class of careless acts which, under the rule of *Himmel* v. *Finkelstein*, 90 N. H. 78, 79, the operator of a motor vehicle is bound to foresee.

O'Keefe testified explicitly that he was not blinded by the light of the first two cars in the line. He testified also that there were "either three or four or six cars coming right along there together" and that he was blinded by "the lights of all of them and fog too." He further testified that there were two cars back of the Wells car and that he was blinded by the lights of those cars. This testimony was altogether too indefinite to warrant a finding that the accident could have been avoided if Wells had dimmed his lights. *Laporte* v. *Houle*, 90 N. H. 50, 52.

Section 10 of chapter 103 of the Public Laws provides that every person operating a motor vehicle shall slow down upon approaching an intersecting way. The accident occurred some distance south of the point where the Cider Mill Road, so called, enters the Lafayette Highway from the east. Although it was conceded at the trial that "this is not truly an intersection accident," it was nevertheless contended that Wells might be found negligent because "he went through it [the intersection] without slowing his speed." The contention is unsound. Since O'Keefe and his passengers were not

travelers on the intersecting way they could not complain of Wells' conduct in relation to the intersection. *Brody* v. *Gilbert*, 82 N. H. 158.

Both Wells and his wife as plaintiffs requested the court to instruct the jury that there was no evidence that Wells was negligent. They also requested an instruction to the effect that O'Keefe was guilty of a violation of the law of the road rendering him liable for all damage or injury caused by such violation. These requests should have been granted. *Prescott* v. *Yurchus*, 86 N. H. 108. In the action of Mrs. Wells as bailor the conduct of Wells, her bailee, was of course immaterial. *Morris* v. *Railroad*, 85 N. H. 265, 272, 273.

*In the actions against O'Keefe, new trials, limited to the issue of damages: in the actions against Wells, judgments for the defendant.*

All concurred.